IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WESTPORT INSURANCE CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACIOTN NO. H-16-1947 |
| | § | |
| PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## ORDER ON IN CAMERA INSPECTION

Pending before the court is Plaintiff Westport Insurance Corporation's ("Westport") Motion to Compel (Doc. 71), in which it seeks disclosure of Pennsylvania National Mutual Insurance Company's ("Penn National") entire claims file concerning a coverage dispute culminating in Lake Texoma Highport, LLC v. Certain Underwriters at Lloyd's, London, et al, Cause No. 08-0604-336, 336th Judicial District of Grayson County, Texas ("the Highport lawsuit").

In the suit, Lake Texoma Highport claimed that Insurance Alliance falsely represented that Lake Texoma Highport was purchasing an insurance policy with blanket coverage but actually sold Lake Texoma Highport a policy with lesser coverage. When Lake Texoma Highport suffered a loss as a result of flooding, it learned that its policy of insurance would not cover much of its loss. Westport was the primary insurer of Insurance Alliance and Penn National was the excess insurer.

On March 10, 2010, Penn National received an email from

Westport which stated that Westport's policy limits were unlikely to be fully available to cover the <u>Highport</u> claim because of other claims presented against its policy insuring Insurance Alliance.[1]

On May 13, 2010, Penn National learned that there had been an offer by the plaintiff in the <u>Highport</u> lawsuit to settle its claims against Westport's insured within Westport's policy limits.[2]  The Penn National's claims adjuster was aware that the legal exposure to Insurance Alliance was in excess of Westport's policy limits and that Westport's attorney considered it a case of 100% liability.[3]

On May 24, 2010, the Penn National insurance adjuster notified Plaintiff's insurance adjuster that Westport had breached its duties under the <u>Stowers</u> doctrine when it failed to settle the <u>Highport</u> suit within its policy limits.[4]  Penn National informed Plaintiff that if Penn National was required to contribute towards a judgment because of Westport's failure to settle the <u>Highport</u> claim, it would seek recovery from Westport for the amount it was required to pay.[5]

On May 2, 2012, a verdict was rendered in the <u>Highport</u> lawsuit.  As anticipated by Penn National and by Westport's

---

[1] <u>See</u> Doc. 73-1, Aff. of Boyd Wright, Ex. 1 to Penn Nat.'s Resp. to Pl.'s Mot. to Compel p. 1.

[2] <u>Id.</u> pp. 1-2.

[3] <u>Id.</u> p. 2.

[4] <u>Id.</u>

[5] <u>Id.</u>

counsel,[6] the verdict exceeded Westport's policy limits. Westport argues that Penn National could not have anticipated litigation until after the verdict was rendered. In light of the evidence before the court, the court disagrees. The court deems that Penn National reasonably anticipated Stowers litigation as of the date of the May 24, 2010 letter.

Westport next argues that even if litigation was anticipated in May 2010, internal Penn National documents that evaluated the merits of the Highport lawsuit are appropriately considered claims handling documents and cannot be work product created in anticipation of litigation.

The federal work product privilege, found in Federal Rule of Civil Procedure 26(b)(3), is applicable to the present dispute. See Dunn v. State Farm Fire & Cas. Co., 927 F.2d 869, 875 (5th Cir. 1991). The privilege protects from disclosure documents "prepared in anticipation of litigation or for trial by or for another party or its representative." See Fed. R. Civ. P. 26(b)(3). A document need not be prepared in the course of an existing lawsuit in order to be considered work product. In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000). However, "the primary motivating purpose" behind the creation of the document must be to aid in

---

[6] See Doc. 73-1, Ex. 1 to Penn Nat.'s Resp. to Pl.'s Mot. to Compel, Jan. 12, 2010 Aff. of Boyd Wright, attaching an advice-of-counsel letter from Robt. McCabe to Plaintiff's insurance adjuster pp. 9-22 of 32. The letter estimated the potential damages from the Highport lawsuit to significantly exceed policy limits. Id. p. 18 of 32.

possible future litigation. <u>Id.</u> Conversely, "Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation or for other non litigation purposes are not under the qualified immunity provided in this subsection." Fed. R. Civ. P. 26(b)(3), 1970 adv. comm. notes.

In determining whether a document was prepared in anticipation of litigation, the court must consider whether it was a routine practice to prepare such a document or whether the document was prepared in response to a non-routine circumstance. <u>See</u> <u>Navigant Consulting, Inc. v. Wilkinson</u>, 220 F.R.D. 467, 477 (N.D. Tex. 2004). If the document would have been prepared without regard to whether litigation was anticipated, it should be deemed to have been made in the ordinary course of business and would not be protected as work product. <u>See</u> <u>Mims v. Dallas Cty.</u>, 230 F.R.D. 479, 484 (N.D. Tex. 2005).

The burden is on the party who invokes the privilege to show that the materials were prepared in anticipation of litigation. <u>See</u> <u>Hodges, Grant & Kaufmann v. U.S. Gov't, Dept. of Treasury, I.R.S.</u>, 768 F.2d 719, 721 (5th Cir. 1985). A general allegation of work product is insufficient to meet this burden. <u>Navigant Consulting, Inc.</u>, 220 F.R.D. at 473.

In the present case, Penn National has provided only the most cursory explanation of its claim of work product in its privilege log. It is Penn National's obligation to provide sufficient facts

within a detailed affidavit to assist the court in determining whether a document constitutes work product. As the record stands, the court has no information concerning: (1) who the parties to any email communications are, e.g., if they are attorneys, or responding to an attorney; (2) that any email or document was prepared at the direction of, or for the benefit of, any attorney in anticipation of litigation; and (3) the specific and precise reason for the claim of work product for each email or document.

It is therefore **ORDERED** that Penn National submit within fourteen (14) days, an amended privilege log and a detailed affidavit(s) from an attorney supporting its claim that a document or email was prepared in anticipation of litigation and would not have been prepared in the normal course of evaluating an insurance claim.[7] Each email in an email string must be separately numbered with an explanation of the privilege claimed for each email.

It is further **ORDERED** that a proposed order be submitted to assist the court in promptly reviewing the in camera documents.[8]

**SIGNED** in Houston, Texas, this 1st day of June, 2017.

_____
U.S. MAGISTRATE JUDGE

---

[7] For example, in Document 1, there are nine emails. The claim of work product must be explained for each email.

[8] As the documents are already numbered on the extant privilege log, the court has no objection to renumbering all emails in Document 1 as 1a, 1b, etc.