UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WESTPORT INSURANCE CORPORATION, *on its own behalf and Assignee of Houstoun Woodward, Eason, Gentle, Tomforde and Anderson, Inc.*, d/b/a INSURANCE ALLIANCE, | § § § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION H-16-1947 |
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY *d/b/a* PENN NATIONAL INSURANCE, | § § § § § | |
| *Defendant*. | § § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is the Magistrate Judge's Memorandum and Recommendation ("M&R) which recommends that (1) plaintiff Westport Insurance Corporation's ("Westport") motion for partial summary judgment ("*Stowers* motion") (Dkt. 103) be granted in part and denied in part; (2) Westport's motion for partial summary judgment ("Breach motion") (Dkt. 104) be granted in part and denied in part; and (3) defendant Pennsylvania National Mutual Casualty Insurance Company's ("Penn National") motion for partial summary judgment on Westport's causes of action for breach of contract and promissory estoppel be granted (Dkt. 106). Dkt. 122. After considering the M&R, objections, motions, responses, replies, and applicable law, the court is of the opinion that the objections should be OVERRULED and the M&R should be ADOPTED IN FULL.

**I. BACKGROUND**

This is a dispute between a primary insurer and an excess insurer. Westport and Penn National do not object to the "Case Background" section of the M&R. Having reviewed that section

for clear error, the court finds that Judge Johnson sufficiently outlined the relevant facts, and the court hereby incorporates that section of the M&R into this order.

In sum, Insurance Alliance ("IA") is an insurance agency. Dkt. 22 at 2. Lake Texoma Highport LLC ("Highport") sued IA for failing to procure the requested insurance coverage to protect its marina, which was damaged during heavy rainfall which caused water levels at the marina to rise to the point that buildings were completely submerged and much of Highport's property was completely destroyed. Dkt. 103-4 at 74. IA had a primary insurance policy from Westport ("Westport Policy") and a policy that provided excess coverage for various underlying insurance policies including the Westport Policy with Penn National ("Penn National Policy"). Dkts. 1-3, 1-4. Ultimately, Westport exhausted its primary policy limits, and Penn National made one payment of $379,885.78. Dkts. 104-6 at 9, 109-8 at 66. Westport, on its own behalf and as assignee of IA, filed this action against Penn National to recover insurance proceeds Westport paid in excess of its policy limits. Dkt. 1.

The M&R addresses three motions for partial summary judgment. Westport's first motion for partial summary judgment, the *Stowers* motion, sought a ruling that, as a matter of law, four out of the five settlement demands identified by Penn National did not trigger Westport's *Stowers* duty to settle. Dkt. 103. Westport's second motion for partial summary judgment, the Breach motion, sought a ruling that Penn National breached its insurance contract with IA, that Penn National cannot use the *Stowers* doctrine as an excuse for a breach of contract, and that if Penn National is successful on its *Stowers* claim, Penn National's recovery should be limited to the amount it paid. Dkt. 104-1. Penn National's motion for partial summary judgment requests judgment on Westport's causes of action for breach of contract and promissory estoppel. Dkt. 106. Judge Johnson recommends that

Westport's *Stowers* motion be granted in part and denied in part, Westport's Breach motion be granted in part and denied in part, and Penn National's motion be granted.

Westport and Penn National both object to the M&R on several grounds. Dkts. 127, 128. Westport objects that (1) Penn National's duty to indemnify was not triggered in June 2016; (2) "Penn National's policy does not require a final settlement or final judgment before coverage attaches"; (3) Penn National should not be allowed to assert *Stowers* as a defense to a breach of contract; and (4) Judge Johnson's finding that whether Highport's settlement demand that was left open for 45 minutes satisfied *Stowers* was a question for the jury. Dkt. 127 at 12, 15, 20–21. Penn National objects that (1) it did not breach its duty to indemnify IA in June 2016; and (2) it did not breach its duty to defend by not assuming IA's defense on February 17, 2016. Dkt. 128 at 4–5. Penn National also seeks clarification regarding its other defenses that were not addressed in the M&R and the effect of the *Stowers* claim on Penn National's responsibility to pay for amounts paid by Westport before its policy was triggered. Dkt. 128 at 6–7.

## II. LEGAL STANDARD & ANALYSIS

For dispositive matters, the court "determine(s) de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* For nondispositive matters, the court may set aside the magistrate judge's order only to the extent that it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

### A. Duty to indemnify

First, the court will address Westport and Penn National's objections regarding whether Penn National breached its duty to indemnify and if it did, when the duty to indemnify was triggered.

3

Penn National argues that it did not breach its duty to indemnify because it made a payment to Highport in June 2016 and it did not owe a duty under the Penn National Policy to reimburse Westport or NASIC, the surety that obtained a substitute supersedeas bond in favor of Highport with IA as principal. Dkt. 128 at 4.

On the other hand, Westport argues that the Magistrate Judge was correct in finding that Penn National breached its duty to indemnify but erred in ruling that "Penn National's duty to indemnify was triggered in June 2016, when the trial court in the *Highport* lawsuit determined the credit due Insurance Alliance for the CRC settlement." Dkt. 127. Westport also objects that the Penn National policy did not require the trial court to rule on the amount of the CRC settlement credit because the "Loss Payable condition does not require a final settlement or judgment." Dkt. 127 at 13. Westport contends that Penn National's duty to indemnify was triggered when the *Highport* trial court issued its final judgment, or, at the latest, when the Texas Court of Appeals issued the mandate and Westport exhausted its policy. Dkt. 127 at 8. Whether or not Penn National breached its duty to indemnify and if it did breach that duty, when it breached that duty, requires an interpretation of the insurance policy.

Under Texas law, the duty to defend and the duty to indemnify are separate duties. *LCS Corr. Servs, Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 668 (5th Cir. 2015). Since insurance policies are contracts, they are construed using ordinary rules of contract interpretation. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009). The primary goal of construction is to give effect to the parties' intent as reflected in the terms of the policy. *Id.* The policy must be read as a whole, and effect must be given to all parts if possible. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010).

The Penn National Policy states that Penn National was to "pay on behalf of the insured the 'ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies." Dkt. 68-2 at 27. Penn National was to "have the right and duty to defend the insured against any 'suit' seeking those damages when the 'underlying insurance' does not provide coverage or the limits of the 'underlying insurance' have been exhausted." Dkt. 68-2 at 27.

Ultimate net loss is defined as "the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the 'underlying insurer's' consent." Dkt. 68-2 at 46. "Retained Limit" is defined as the "available limits of 'underlying insurance' scheduled in the declarations or the 'insured's retained limit', whichever applies." Dkt. 68-2.

Taking the text of the insurance policy on its face, Penn National was obligated to pay the sum, after reduction for recoveries or salvages, in excess of the retained limit. For coverage liability to apply, the "Loss Payable" condition must be met. The policy states that: "Liability under this Coverage Part shall not apply unless and until the **insured** or **insured's 'underlying insurer'**" has become obligated to pay the 'retained limit'. Such obligation by the insured to pay part of the 'ultimate net loss' shall have been previously determined by a final settlement or judgment after an actual trial or written agreement between the insured, claimant, and us." Dkt. 68-2 at 42 (emphasis added).

Westport argues that Judge Johnson incorrectly focuses on the second sentence and ignores the first sentence. Dkt. 127 at 9. The first sentence of the "Loss Payable" condition requires Penn National to pay when the "insured's 'underlying insurer' has become obligated to pay the 'retained

5

limit.'" *Id.* As such, Westport contends that the relevant question is when Westport, the insured's underlying insurer, became obligated to pay the retained limit. *Id.* Westport argues that even if the second sentence applies, the *Highport* court's final judgment satisfies the requirement of "a judgment after an actual trial" and "Westport's $9.9 million payment in February 2016 of the undisputed portion of that judgment satisfies the requirement of the second sentence." *Id.* at 13–14.

The court has reviewed these issues de novo and fully agrees with Judge Johnson's interpretation. Judge Johnson correctly interpreted the Penn National policy to mean that "coverage liability applied when Westport became obligated to pay its available limits toward the 'total sum, after reduction for recoveries or salvages collectible' as determined by a final settlement or judgment after an actual trial." Dkt. 122 at 70–71. Further, Judge Johnson correctly decided that the Penn National Policy "was not triggered until the disposition of all issues in the Highport case" which occurred when the "trial court issued the order determining the balance due in consideration of all credit to IA for the CRC settlement." Dkt. 122 at 71; *see also Mid-Continent Cas. Co. v. Eland Energy, Inc.*, No. CIV.A. 3:06-CV-1576-D, 2009 WL 3074618, at *17 (N.D. Tex. Mar. 30, 2009) (interpreting an insurance policy to require that the insured's obligation be "finally determined" before an insurer had a duty to indemnify).[1] Therefore, both Westport's and Penn National's objections are OVERRULED.

---

[1] Specifically, the "When Loss Payable" condition stated: "[Mid-Continent's] liability for any portion of ultimate net loss shall not apply until the insured or any underlying insurance shall be obligated to actually pay the full and complete amount of the retained limit. When ultimate net loss has been finally determined, the insured may make claim for indemnity under this policy as soon as practicable thereafter. Such insured's obligation to pay any amount of ultimate net loss must have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and [Mid-Continent]." *Id.* at *16.

**B. Duty to defend**

Next, the court will address Penn National's objection regarding the duty to defend. Penn National objects that it did not breach a "duty to defend by not assuming IA's defense on February 17, 2016." Dkt. 128 at 5. Again, the court will engage in contract interpretation to understand the scope of the parties' duties.

Penn National's policy with IA states that "[w]hen the underlying limits of insurance have been used up in the payment of judgment of settlements, the duty to defend will be transferred to us." Dkt. 68-2 at 42. Penn National objects that it did not breach a duty to defend when it did not assume IA's defense on February 17, 2016. Dkt. 128 at 5. Penn National argues that Westport's payment in February 2016 was before final judgment in June 2016 and it did not settle Highport's claims against IA, as such Westport had a continuing duty to defend. *Id.* Penn National points to *Continental Casualty Co. v. North American Capacity Insurance Co.*, where the Fifth Circuit held that the primary insurer's duty to defend had not ended when it made a payment that exhausted its policy limits. 683 F.3d 79, 89 (5th Cir. 2012).

The court finds *Continental* is distinguishable. In *Continental*, the primary insurer's policy provided that its "right and duty to defend end[ed] when [the primary insurer] used up the applicable limit of insurance in the payment of judgments or settlements." *Id.*[2] The primary insurer had entered into a settlement with the plaintiff but that settlement did not end the plaintiff's claims against the insured. *Id.* In fact, the settlement agreement allowed the plaintiff to continue to prosecute its

---

[2] Westport's policy contains similar language. Specifically, Westport's policy states that "We shall not be obligated to . . . defend or continue to defend any 'claim' after the Per Claim Limit of Liability or Aggregate Limit of Liability under this 'coverage unit' has been exhausted by payment of 'loss' or the deposit in a court having jurisdiction of sums exhausting the Per Claim Limit of Liability or Aggregate Limit of Liability." Dkt. 104-3 at 18. "Loss" is defined as "amounts payable by an insured in settlement of 'claims' or in satisfaction of judgments or awards . . . if covered by the Insuring Agreement." *Id.* at 19.

existing claims against the insured. *Id.* The primary insurer's payment "was not to be applied to an existing judgment but instead to some future judgment . . ." *Id.* As such, the primary insurer's payment was not pursuant to a settlement or a judgment as required by the policy.

In contrast, the payment that exhausted Westport's primary policy limits was part of a payment that settled claims against IA. After the Supreme Court of Texas had denied the petition for review and the Fifth Court of Appeals of Texas had issued a mandate affirming the trial court's judgment, Highport began threatening collection action. Dkt. 122 at 43, 46–47. To stop collection efforts, IA, Westport, and NASIC entered into a memorandum of understanding ('MOU") that required NASIC to pay Highport the undisputed amount of the judgment ($9,936,492.65), and to pay the bond's balance ($1,321,368.35) into the court's registry until all remaining issues, including any settlement credit due to IA for funds paid by CRC in settlement of its claims. Dkt. 128 at 48. On February 17, 2016, Westport reimbursed NASIC for its payment of the undisputed portion of the judgment to Highport. Dkt. 128 at 51. The purpose of Westport's payment that exhausted its policy limits was to settle Highport's claims against IA because of an existing judgment. Because the payment that exhausted Westport's policy helped settle claims against IA, the court finds that Judge Johnson correctly determined that Penn National's duty to defend was triggered on February 17, 2016, and Penn National breached that duty by not assuming IA's defense when Westport notified IA that the primary policy had exhausted. Penn National's objection to this finding is OVERRULED.

## C. Effect of Westport's potential *Stowers* liability

In the M&R, Judge Johnson found that: "If the *Stowers* claim is successful, Westport could be liable for the entire amount of the judgment and would be required to reimburse Penn National . . . Penn National would be entitled to recover from Westport only that which it paid. If the *Stowers*

8

claim is unsuccessful, Westport would be entitled to recover from Penn National the entire amount of the judgment in excess of Westport's remaining policy limits less the amount paid by Penn National." Dkt. 122 at 76–77.

Westport argues that Judge Johnson's ruling allows Penn National to assert "*Stowers* as a de facto defense to its breach of contract." Dkt. 127 at 15. Westport contends that (1) *Stowers* is not a complete defense to a breach of the insurance policy; (2) Penn National cannot maintain a claim for equitable subrogation when it has unclean hands; and (3) Judge Johnson's ruling will create "perverse incentives for excess insurers" to refuse to pay "where there is a demand within limits and an excess judgment." Dkt. 127 at 19–20.

Penn National also seeks clarification regarding these statements, as it appears that if the *Stowers* duty was not breached, Penn National would be responsible "for a portion of a payment made by Westport in February 2016, well before Penn National's policy was triggered." Dkt. 128 at 7. Penn National objects that it should not be responsible for payments before its policy was triggered. *Id.*

The court has considered these policy arguments and finds that Judge Johnson correctly determined the effect of a *Stowers* claim when an excess insurer has breached the insurance policy. The breach of the insurance policy and the *Stowers* claim are two separate claims and while a *Stowers* verdict would not affect when the policy was triggered, it could affect the amounts owed. As such, Judge Johnson correctly determined the effect of the *Stowers* claim on the breach of contract claim. Accordingly, Westport's and Penn National's objections are OVERRULED.

**D. *Stowers* settlement demand**

Westport objects to Judge Johnson's ruling that whether the May 2009 $2 million settlement demand held open for 45 minutes satisfied the requirements of a *Stowers* demand is a question for

the jury. Dkt. 127 at 21. Westport argues that no reasonable jury could find that the 45 minute window to accept the settlement demand afforded a reasonable opportunity to settle the case. *Id.* According to Westport, Judge Johnson relies on *American Insurance v. Assicurazioni Generali* for the proposition that the context of the demand must be considered in determining what is a reasonable opportunity to settle. Dkt. 127 at 22; *see also* 228 F.3d 409 (5th Cir. 2000). Westport argues that the context in *Generali* was different than the May 2009 demand because the *Highport* lawsuit was in the early stages of the lawsuit and there was a shorter time frame to consider the demand. Dkt. 127 at 22–23.

The court agrees with Judge Johnson's determination that the context of the settlement demand is a question best left for the jury. Judge Johnson noted that the context of *Generali* was different than that of the present case. Dkt. 122 at 64. A review of the record shows that, at the time the demand was made, IA and Westport had knowledge the potential damages of the claim exceeded the policy limits, and the parties had been engaged in a lengthy mediation. *See* Dkts. 122 at 65, 103-7, 106-5. Because of the context of the settlement demand, the court cannot find, as a matter of law, that the May 2009 settlement demand with a 45 minute deadline was not a reasonable opportunity to settle the claim against the insured. Accordingly, Westport's objection is OVERRULED.

**E. Request for clarification of defenses not addressed in the M&R**

Penn National made several requests for clarification. Penn National argues that in its response to Westport's Breach motion, it raised three defenses (voluntary payment, settlement without consent, and assignment without consent) that were not addressed in the M&R. Dkt. 128 at 6. Penn National requests clarification on whether the M&R is "recommending that those defenses are reserved for trial, or is recommending that they be disposed of without addressing them." *Id.*

10

The court has reviewed the defenses raised in the response and finds that they are reserved for trial because Penn National did not move for summary judgment on these issues. The M&R addresses why the voluntary payment and settlement without consent defenses do not preclude partial summary judgment in Westport's favor. Dkt. 122 at 72, 77. Finally, the assignment without consent defense does not impact Westport's Breach motion.

### III. UNOPPOSED MOTION

No objections were made regarding Penn National's motion for partial summary judgment on Westport's causes of action for breach of contract and promissory estoppel.[3] Dkt. 106. The court, having reviewed the M&R, the motion, response, reply, and applicable law, and having received no objections regarding these motions, finds no clear error. *See* Fed. R. Civ. P. 72(b), advisory committee's note to 1983 amendment ("[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation"). Thus, the court ADOPTS the M&R regarding Penn National's motion for partial summary judgment on Westport's causes of action for breach of contract and promissory estoppel.

---

[3]The court recognizes that Penn National filed a separate motion for reconsideration of Judge Johnson's September 7, 2018 order that granted Westport's motion to strike Penn National's expert, Thomas Wright (Dkt. 124). Dkt. 129. This motion will be addressed in a separate order and does not affect the conclusions of this order.

## IV. Conclusion

Westport's and Penn National's objections to the M&R (Dkts. 127, 128) are OVERRULED. The M&R (Dkt. 127) is ADOPTED IN FULL. Westport's *Stowers* motion is GRANTED as to the May 2012 $4.9 million demand and DENIED as to the May 2009 $2 million demand and the July 2010 and November 2010 $3.6 million counteroffers. Westport's Breach motion is GRANTED as to Penn National's breach of its duty to indemnify in June 2016 and Penn National's breach of its duty to defend in February 2016. Westport's Breach motion is DENIED as to Penn National's duty to indemnify before June 2016. Penn National's motion is GRANTED.

Signed at Houston, Texas on September 28, 2018.

Gray H. Miller
United States District Judge