IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY d/b/a PENN NATIONAL INSURANCE, <br><br> Plaintiff, <br> VS. <br><br> WESTPORT INSURANCE CORPORATION, on its own behalf and as Assignee of HOUSTOUN, WOODWARD, EASON, GENTLE, TOMFORDE, AND ANDERSON, INC. d/b/a INSURANCE ALLIANCE, <br><br> Defendant. | § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:16-CV-01947 |

## JURY INSTRUCTIONS

**MEMBERS OF THE JURY:**

### I.  General Instructions

You have heard the evidence in this case. In cases such as this, there are two judges. I am the judge of the law and in that role, I will now instruct you on the law that you must apply in reaching your verdict. First, I will give some general instructions that apply in most cases, for example, about how to judge the believability of the witnesses. Then, I will give you some specific rules of law that apply in this case. Finally, I will explain to you the rules to follow in your deliberations. It is your duty to follow the law as I give it to you. You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you.

On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on

the law. Nevertheless, you should pay close attention to them as they are intended to assist you in understanding the evidence and the parties' contentions.

On the verdict form, that I shall explain in a moment, you will be asked to answer some questions about the factual issues in this case. Answer each question from the facts as you find them. It is your duty to base your verdict solely upon the evidence. Do not decide who you think should win and then answer the questions accordingly. Do not let bias, prejudice, or sympathy play any part in your deliberations. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the court, and reach a just verdict regardless of the consequences. Your answers and your verdict must be unanimous. You will never have to explain your verdict to anyone.

You must answer all questions from a preponderance of the evidence. This means the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of whom may have called them, and all exhibits received in evidence, regardless of whom may have produced them.

There are two types of evidence that you may properly consider in finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

During the trial I sustained objections to certain questions. You must disregard those questions entirely. Do not speculate as to what the witness would have said if permitted to answer the question. I have also stricken certain testimony. You must not consider any such testimony for any purpose in your deliberations. Your verdict must be based solely on the legally admissible evidence and testimony.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason

and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The law does not require any party to call as witness all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Likewise, the law does not require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

An important part of your job will be making judgments about the testimony of the witnesses. You are the sole judges of the credibility or "believability" of each witness and the weight to be given the witness's testimony. You should decide whether you believe all or any part of what each person had to say, and how important that testimony was.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial. In making your decision about a witness' testimony, I suggest that you ask yourself a few questions: Did the person impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness have any relationship with any of the parties? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he or she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? These are a few of the considerations that will help you determine the accuracy of what each witness said.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

3

Certain testimony was presented to you through a deposition. During the deposition, the witness was under oath and the parties were asking the witness questions. Deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

This case should be considered and decided by you as an action between persons of equal standing in the community and holding the same or similar stations in life. A company and a person are equal before the law and must be treated as equals in a court of justice. An entity is entitled to the same fair trial at your hands as a private individual.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

## II.   Specific Instructions Concerning this Case

The Plaintiff in this action is Pennsylvania National Mutual Casualty Insurance Company and is referred to as "Penn National". The Defendant is Westport Insurance Corporation, otherwise referred to as "Westport". Penn National has the burden of proving its case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If, after considering all of the evidence, you find that Penn National failed to prove one or more of the elements of its claims by a preponderance of the evidence, your verdict on that claim must be for Westport.

Each question on the verdict form is specific as to a certain date or time period. The fact that you may answer "yes" or "no" on one of the questions should not control your verdict as to any other question. Each question and the evidence pertaining to it should be considered separately.

## A. Stipulated Facts

The parties have agreed, or stipulated, to the following facts. A stipulation is an agreement between the parties. This means that both Penn National and Westport agree that these are facts. It means that there is no dispute as to those facts. You must accept a stipulated fact as true and treat that fact as having been proven here in court. You must therefore treat the following facts as having been proved:

1. Insurance Alliance contracted with Highport to act as Highport's agent in procuring property insurance coverage for its Marina.

2. Insurance Alliance entered into agreements with insurance agents and brokers, including CRC Insurance Services, Inc. ("CRC") and Bowood Partners Limited ("Bowood"). Ultimately, Insurance Alliance, through Bowood and CRC, procured from Certain Underwriters at Lloyd's London ("Lloyd's") a policy for the Highport Marina.

3. Westport issued a Professional Liability Policy No. WED4TX00735801, otherwise referred to as the Westport Insurance Policy, to Insurance Alliance. The Policy period was from June 1, 2007, to June 1, 2008.

4. The Westport Insurance Policy provided primary insurance coverage with a per claim limit of liability of $5 million and an aggregate limit of liability of $5 million for the Insurance Industry Professional Liability Coverage Unit.

5. The claims by Highport against Insurance Alliance fell within the coverage of the Westport Insurance Policy.

6. Penn National issued Insurance Alliance an Umbrella Liability Policy, No. 3810602865, referred to as the Penn National Insurance Policy. The policy period ran from June 1, 2007, to June 1, 2008.

7. The Penn National Policy provides Insurance Alliance with $15 million per occurrence limit and $15 million aggregate limit in excess "commercial liability" coverage.

8. In 2007, a storm occurred that caused damage to Lake Texoma Highport, LLC's Marina commonly referred to as the Highport Marina.

9. Highport submitted a multi-million-dollar insurance claim to its insurers. The claim was for the extensive damage that the storm caused to the Highport Marina.

10. In 2008, Highport filed a petition against Insurance Alliance and Certain Underwriters at Lloyd's alleging that the policy Insurance Alliance obtained did not provide the coverage that Insurance Alliance had previously represented to Highport.

5

11. Westport agreed to defend Insurance Alliance in the Highport Lawsuit under a reservation of rights in the Westport Insurance Policy.

12. Eventually, the case went to trial. At trial, the jury found in favor of Highport. It awarded $8,738,598 in damages and the jury also awarded Highport's attorney fees in an amount of $2,754,446 million for the trial, $280,000 for the appeal, and $75,000 for the petition for review.

13. On June 20, 2012, the trial court in the Highport Lawsuit entered a Final Judgment in favor of Highport and against Insurance Alliance, awarding damages, attorney fees, court costs, and pre-judgment and post-judgment interest, totaling $13,328,149.60.

14. Insurance Alliance appealed the judgment to the Court of Appeals for the Fifth District of Texas.

15. While the judgment against Insurance Alliance was on appeal, Highport settled with CRC after the arbitration. Highport filed a motion to determine the amount of offset due to Insurance Alliance.

16. In order to prevent enforcement of the judgment against Insurance Alliance's assets during the appellate process, the parties needed to obtain a supersedeas bond. Originally, Insurance Alliance as principal and Liberty Mutual Insurance Company as surety obtained a supersedeas bond in the full amount of the judgment to stop execution. Later, Insurance Alliance as principal and North American Specialty Insurance Company ("NASIC") as surety obtained a substitute supersedeas bond in favor of Highport. Westport agreed to indemnify NASIC.

17. Ultimately, the Court of Appeals affirmed the judgment. Insurance Alliance subsequently filed a petition for review with the Supreme Court of Texas which was denied. The Supreme Court of Texas later denied rehearing of the petition for review. At this point in time, an issue of the credit due to Insurance Alliance remained.

18. Insurance Alliance and NASIC entered into a Memorandum of Understanding ("MOU") with Highport. Penn National did not participate in these negotiations. Under the MOU, NASIC satisfied the undisputed amount of the judgment ($9,336,492.65). Westport reimbursed NASIC for the full amount. Under the MOU, NASIC also paid the disputed amount into the court's registry until all remaining issues, including settlement credits due to Insurance Alliance, were resolved.

19. The trial court held a hearing on June 6, 2016, concerning the amount of offset due to Insurance Alliance in light of the settlement. At the hearing, the trial court held that the balance due was $1,697,820.48 with $228.91 additional post-judgment interest accruing

daily. The Court gave notice of its ruling on June 8, 2016, and directed the clerk to release the remainder of the deposit ($1,321,368.35) in the registry of the court as partial satisfaction of the judgment.

20. On June 13, 2016, Penn National paid the remaining amount of the judgment, $379,885.78.

### B. Specific Instructions Concerning Questions 1–4

Penn National claims that Westport violated its duty to act as an ordinarily prudent insurance company under the "*Stowers*" doctrine by not accepting settlement demands in the Highport-Insurance Alliance Lawsuit on four different occasions: on May 20, 2009, on September 22, 2009, in July of 2010, and in November of 2010. Westport denies these claims. As you have heard, the Stowers Furniture Company was a party to a lawsuit that was tried almost 100 years ago. Over time in Texas, its name has evolved into a term used to describe the duties placed on an insurance company when it addresses a settlement demand made to one of its insured if that demand is within its policy limits.

Simply put, under Texas law, which embodies the *Stowers* doctrine, an insurance company, when deciding to accept a settlement demand within its insured's policy limits, must act as an ordinarily prudent insurance company. In other words, the insurance company must not be negligent. It should not fail to do what an ordinarily prudent insurance company would do under the same or similar circumstances or do what an ordinarily prudent insurance company would not have done under the same or similar circumstances. A mere mistake is not negligence unless it is the result of a company not acting as an ordinarily prudent insurance company would act under the same or similar circumstances as described above.

To prevail on its respective claims, Penn National must prove by a preponderance of the evidence each of the following:

    (1) The settlement demand was within the policy limits of the Westport Insurance Policy insuring Insurance Alliance;

    (2) The settlement demand fully released Insurance Alliance; and

    (3) An ordinarily prudent insurer would have accepted the demand.

You will be asked four questions on the verdict form. They correspond to the dates referenced above. All three elements must be proven as to each date for you to find that the burden of proof was satisfied as to that question. Each of the dates listed above and the evidence regarding

7

those settlement demands should be considered separately. Your answer to one of the questions should not control your answer to another.

When considering these questions, you should consider all of the relevant circumstances at the time, including but not limited to the likelihood and degree of Insurance Alliance's potential exposure to a judgment in excess of Westport's policy limits, the likelihood of obtaining a full release of the Highport's claims against Insurance Alliance, the clarity of the settlement demand, the position of the insured regarding settlement, and whether the demand is unconditional.

### III.    Deliberations and the Verdict

On retiring to the jury room, you should select one of your number as your foreperson, who will preside over your deliberations and will speak for you here in the courtroom. Your verdict must represent the considered judgment of each juror. To return a verdict, it is necessary that each juror agree. In other words, your verdict must be unanimous. You will never have to explain your verdict to anyone.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself—but only after an impartial consideration of all the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Remember at all times you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

You may not decide the answer to a question by lot, by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

A verdict form has been prepared for your convenience. You will take the verdict form to the jury room, and when you have reached an agreement as to your unanimous verdict, you will have your foreperson fill it in, date and sign it, and then return it to the courtroom.

If during your deliberations you want to communicate with me, please reduce your message or question to writing signed by the foreperson and pass the note to the Marshal who will bring it to my attention. I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally. I caution you, however, that in any message or question you might send, you should never state or specify your numerical division, if any, at that time.

SIGNED on the 9th day of December 2022, at Houston, Texas.

_____
Andrew S. Hanen
United States District Judge